IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| PHILLIP DAVID HASKETT | § § | |
| Plaintiff, | § § | |
| vs. | § § | CIVIL ACTION NO. G-14-257 |
| PERCHERON, LLC, et al. | § § | |
| Defendants. | § | |

## OPINION AND ORDER

Before the Court, with the consent of the parties, are the following: Defendant Percheron Holdingss, LLC's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Dkt. Nos. 6, 7, 38), which the Court formally converted to a Motion for Summary Judgment (Dkt. No. 24); Defendant Percheron Holdingss, LLC's "Traditional Motion for Summary Judgment and Brief in Support on Plaintiff's Claims under the Age Discrimination in Employment Act (Dkt. No. 19); and Defendant Percheron Holdings, LLC's Motion to Strike Plaintiff's Second Amended Response and its Reply to Plaintiff's Amended Response to its Converted Motion for Summary Judgment. (Dkt. No. 45).

## I. BACKGROUND

This lawsuit involves a claim of age discrimination under the Employment Act of 1967 (ADEA), 29 U.S.C. § 621. (Dkt. No. 1). The Plaintiff in this action, Phillip David Haskett

1

(Haskett), is a 58- year-old[1] individual who resides in the State of Texas. (*Id.* at ¶¶1-2). Haskett is a Registered Professional Landman (RPL),[2] a designation he obtained in 2008, which is certified by the American Association of Professional Landmen. After he obtained his RPL, Haskett worked as an "independent landman" for an additional five years until he became "chronically unemployed" on or around November 1, 2012. (*Id.* at ¶¶17 -19).

In pursuit of his search for work, Haskett maintained a profile on the website "Landmen.net." (Dkt. No. 1 at ¶¶17, 18). On this website, Haskett "kept his name posted on [the] bulletin board, and regularly update[d] his information in order to 'reposition' his name at the top of the list." (*Id.* at ¶19). Since early 2013, Haskett "regularly applied"[3] for work as a landman with Defendant Percheron, LLC without receiving any response. (*Id.* at ¶21, Ex. No. 2). "After repeated such applications, [Haskett] concluded that Percheron was engaging in discriminatory hiring practices designed and intended to exclude older, more experienced landmen such as himself." (Dkt. No. 1 at ¶23).[4]

Despite such beliefs, in early November 2013, Haskett "received an email from a Percheron prospect manager named Justin Connor inquiring about his availability" for a project in Colorado with the request that he call. (Dkt. No. 1 at ¶¶24, 25). Haskett telephoned and

---

[1] Haskett states his date of birth is April 16, 1957. (Dkt. No. 1 at ¶2).

[2] An RPL designation is generally accepted in the industry as evidence of significant competency as a landman. The certification requires proof of five years of prior experience as a petroleum landman and the successful completion of a written test.

[3] As indicated in his EEOC charge, Haskett applied for different postings seeking a landman position on the following dates in 2013: 01/25; 05/13; 06/13; 07/29; 06/06; 09/23; 10/09; 10/21; and 10/28.

[4] Haskett contends that his resume and the dates contained therein would inform a reviewer that he was an older individual. (Dkt. No. 1 at 7, ¶20).

discussed the Colorado project with Connor. Following the call, Haskett sent an email to Conner which explained , in relevant part, that while he did not reside in Colorado, he was willing to travel there to work on the project. Haskett received no response to his email from Connor. Because he was not hired, Haskett concluded that he was being subjected to discriminatory hiring practices based on his age and he filed a complaint with the Equal Employment Opportunity Commission (EEOC) on November 25, 2013. (*Id.*, Ex. No. 1). After conducting an investigation, the EEOC issued Haskett a right-to-sue letter on April 25, 2014. (*Id.*).

Haskett initiated this action on July 24, 2014, and as defendants he named "Percheron, LLC; Unknown clients of Percheron #1 - #9; [and] Jon Doughs #1 - #9." (Dkt. No. 1). In his Complaint, Haskett alleges that Defendant Percheron, LLC failed to hire him in violation of the Age Discrimination in Employment Act (ADEA) and that Defendants "Unknown Clients #1-#9" are liable, under a theory of *respondeat superior*, for violating the ADEA. Haskett also seeks a declaration that a landman is an employee rather than an independent contractor. (*Id.* at 17). Defendant Percheron Holdings, LLC moved for dismissal or, in the alternative, summary judgment on the ground that Percheron LLC is not a proper party and that Percheron Holdings, LLC was not involved in the decision about whether to retain the services of Haskett. (Dkt. Nos. 6, 7, 38). Defendant Percheron Holdings LLC also argues that summary judgment is warranted because the ADEA does not apply to independent contractors and, even if it did, there is no any evidence of age discrimination. (Dkt. No. 19). Following numerous submissions by the parties in the form of responses, replies and supplements (Dkt. Nos. 8, 9, 27, 28, 38, 42, 43, 44, 45, 46, 48), the Defendant's motions are now ripe for consideration.

## II. STANDARD OF REVIEW

The Court analyzes Defendant's Motion under the well-established summary judgment standard. Fed. R. Civ. P. 56(c); *see generally*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 576, 586-87 (1986); *Burge v. Parish of St. Tammany*, 187 F.3d 452, 464 (5th Cir. 1999); *United States v. Arron*, 954 F.2d 249, 251 (5th Cir. 1992).

## III. DISCUSSION

Haskett brings his claim against Defendant Percheron, LLC under the ADEA. The ADEA prohibits age discrimination in employment. *See* 29 U.S.C. § 621(b). Under the Act, it is unlawful for employers "to fail or refuse to hire or to discharge any individual or otherwise discriminate against an individual with respect to his compensation, terms, conditions, or privileges or employment, because of such individual's age." 29 U.S.C. § 623(a)(1). A defendant's status as an employer is a predicate for liability under the Act. *See*, 29 U.S.C. §623 (an individual or entity cannot be held liable for allegedly discriminatory actions unless they qualify as an "employer" under the statute).

Percheron Holdingss, LLC, which does business as Percheron, LLC,[5] argues that Haskett has no cognizable claim against it because he did not apply for any landman positions with Percheron Holdingss, LLC and that it had no involvement in any decision to hire any landman.

---

[5] MDE Holdingss, LLC, which is also known as Percheron Holdingss, LLC, does business as Percheron LLC, however, Percheron, LLC is not a legal entity. (Dkt. No. 6, Exs. 1, 2, 3). The fact that Haskett named Percheron, LLC as the defendant in this case instead of Percheron Holdingss, LLC, is a misnomer and generally a curable error. *See Dalton v. State Farm Lloyd's, Inc.*, 4 F.Supp.3d 859, 863-64 (S.D.Tex.2014) (distinguishing between misnomers and misidentification and the effect of each).

4

(Dkt. No. 6).[6] Instead, refocusing the spotlight on a non-defendant third party, Percheron Holdingss, LLC maintains that the landman positions that Haskett applied for were with Mason Dixon Energy, LLC, d/b/a Percheron Energy, LLC. Although Percheron Holdingss, LLC acknowledges that Mason Dixon Energy is one of its subsidiaries,[7] implicit in its argument is that Mason Dixon Energy is a separate and distinct legal entity that possesses "its own separate assets and liabilities" that cannot be imputed to it. (Dkt. No. 6). *Capital Parks, Inc. v. Southeastern Advertising and Sales Sys., Inc.*, 30 F.3d 627 (5th Cir. 1994) (recognizing the well-established point of law that a parent corporation and its subsidiaries are separate and distinct legal entities); *Engel v. Teleprompter Corp.*, 703 F.2d 127 (5th Cir. 1983).

Haskett challenges Percheron Holdings, LLC's position and he appears to argue that the lines between the companies were so blurred that Mason Dixon Energy, LLC, d/b/a Percheron Energy, LLC was merely an agent of, or acting for, Percheron Holdings, LLC d/b/a Percheron, LLC. For example, Haskett points out that when the attorney for Percheron Holdings, LLC responded to the EEOC request, he made no attempt to differentiate between the companies; rather, he merely referred to Percheron generally. In addition, the postings for the lineman positions merely reference Percheron. To the extent that Haskett could be heard to argue that these distinct entities are so integrated that they constitute a single employer, the argument would have a basis in law. For purposes of the ADEA, the term "employer" has been broadly construed to include superficially distinct entities that are sufficiently interrelated to constitute a single,

---

[6] Although not framed as such, the crux of Percheron Holdingss, LLC's argument appears to be that it was not an "employer" for purposes of imposing liability under the Act.

[7] Percheron Holdings, LLC acknowledges that it is the parent company of Mason Dixon Energy, LLC, which (as of January 1, 2013) is doing business as Percheron Energy, LLC. (Dkt. Nos. 38, 46).

integrated enterprise. *See Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 777 (5th Cir.1997) (recognizing that under the ADEA, a parent corporation and its subsidiary may be regarded as a "single employer" and discussing the four factor test that is used to make this determination). However, even if the Court were able to make this determination based on the evidence in the record, it sees little need to do so because the case turns on another issue: Haskett's own status under the Act.

It is well-established that the protections afforded by the ADEA extend to employees (or prospective employees), but not to independent contractors. *See Hickey v. Arkia Indus., Inc.*, 699 F.2d 748, 753 (5th Cir. 1983) (it is well-established that the protections of the Act extend to employees, but not to independent contractors). Haskett insists that controlling authority dictates that landmen must be viewed as employees (or prospective employees), rather than independent contractors. In support of his view, Haskett relies on a 1965 revenue ruling from the IRS. *See* IRS Rev. Rul. 65-277 1965-2 C.B. 393, 1965 WL 13032. Haskett's reliance is misplaced. A "revenue ruling" is an interpretation of the law, published by the IRS in its biannual cumulative bulletin, indicating how the IRS believes the tax law should be applied to a particular set of facts. *See* 26 C.F.R. § 601.601(d)-(e) (2001); *see also*, Jacob Mertens, THE LAW OF FEDERAL INCOME TAXATION § 1:12, 1–13 (1999). It is not controlling on the Courts. *See Kornman & Assocs. v. United States*, 527 F.3d 443 (5th Cir.2008) (denying *Chevron* deference to IRS revenue rulings). Rather, as the Fifth Circuit has made clear, "[a] ruling is merely the opinion of a lawyer in the agency and must be accepted as such." *Stubbs, Overbeck & Assoc., Inc. v. United States*, 445 F.2d 1142, 1146–47 (5th Cir.1971); *Cf. Estate of McLendon v. Comm'r*, 135 F.3d 1017, 1024 n. 15 (5th Cir.1998) (allowing the taxpayer to rely on a revenue ruling, but admitting that there was

significant tension between its position and that of the Supreme Court).

In this Circuit, courts are instructed to apply an "economic realities/common law control" test to determine whether a individual is an employee or an independent contractor. *Juino v. Livingston Parish Fire Dist. No. 5*, 717 F.3d 431, 433-35 (5th Cir.2013); *Deal v. State Farm Cnty. Mut. Ins. Co. of Texas*, 5 F.3d 117, 118-19 (5th Cir. 1993). The common law control portion of the test, which is the more important aspect of the analysis, inquires into "the extent to which the one for whom the work is being done has the right to control the details and means by which the work is to be completed." *Juino*, 717 F.3d at 434; *Deal*, 5 F.3d at 118-119 (recognizing that "[t]he right to control an employee's conduct is the most important component of this test"). While no one factor is dispositive, the courts examine the control element based on the following factors: (1) whether the organization can hire or fire the individual or set the rules and regulations of the individual's work; (2) whether and, if so, to what extent the organization supervises the individual's work; (3) whether the individual reports to someone higher in the organization; (4) whether the parties intended that the individual be an employee, as expressed in written agreements or contracts; and (5) whether the individual shares in the profits, losses, and the liabilities of the organization. *Clackamas Gastroenterology Assoc., P.C. v. Wells*, 538 U.S. 440, 451 (2003) (articulating factors to determine whether control exists in ADA context); *Coleman v. New Orleans & Baton Rouge S.S. Pilots' Ass'n*, 437 F.3d 471, 481 (5th Cir. 2006) (applying the test set forth in *Wells* in the ADEA context).

The Fifth Circuit has explained that the economic realities portion of the test requires proof that the putative employees, "as a matter of economic reality, are dependent on the business to which they render service." *Juino*, 717 F.3d at 434 (quoting *Diggs v. Harris Hosp.-Methodist,*

7

*Inc.*, 847 F.2d 270, 272 n. 3 (5th Cir.1988)). The "economic realities" aspect of the test examines the following factors:

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated [,] i.e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"[,] (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

*Juino*, 717 F.3d at 434–35 (citation omitted); *see also*, *Broussard v. L.H. Bossier, Inc.*, 789 F.2d 1158, 1160 (5th Cir.1986) (citing *Spirides v. Reinhardt*, 613 F.2d 826, 832 (D.C.Cir.1979) (detailing the factors that the Fifth Circuit has recognized as relevant to determining employee status).

The Court has considered the evidence in this case under this framework. However, even when viewing the evidence in a light most favorable to Haskett, there is no evidence of any quality and weight which would enable a jury to properly find that the position he applied for was that of an employee rather than an independent contractor. On the contrary, the undisputed evidence reflects that Haskett applied for positions as an independent contractor to perform landman services. For example, when applying for the positions, Haskett repeatedly held himself out to be an "Independent Petroleum Landman" and a part of "Kinetic Energy Group, LLC." (Dkt. No. 19, Ex. 1). The contract Haskett would have executed, and which was executed by Donald King (the individual who was selected for the landman work), also clearly stated that the position is that

8

of an independent contractor and that Percheron had no control. (Dkt. No. 19, Exs. 2, 3). *See Craft-Palmer v. State Farm Ins. Co.*, 157 F.3d 903, 1998 WL 612388 at *1 (5th Cir. 1998) (a contract's identification of an individual as an independent contractor -- and not an employee – is evidence of the individual's status as an independent contractor). In addition to restricting control, the contract expressly provided that the contractor [the landman] was free to provide services concurrently for other businesses, competitive or non-competitive. *See Hickey v. Arkla Indus., Inc.*, 699 F.2d 748, 752 (5th Cir. 1983) (applying the economic-realities test in an ADEA case, the court determined that an gas-products salesman was an independent contractor because his profit hinged on his ability to increase customer volume through initiative and skill and the salesman could sell competitor's products). The contract expressly provided that the landman was not permitted to hold himself out as an employee of the company; that no equipment or any training would be provided by the company because the landman was a fully trained Independent Petroleum Landman; that the landman was required to provide all supervision, labor, equipment, material, transportation and insurance; that the landman was required to control the means and methods of work necessary for performance of the services as an independent contractor; that the landman controlled the hours of work, the amount of time necessary to complete the work and the manner of completing the services; and the landman was responsible for paying all taxes, including Social Security taxes. (Dkt. No. 19, Ex. 2). Although a project supervisor for the company was permitted to review the progress of the work performed, this does not transform the landman's independent status. Since Haskett has not raised a controverted issue of material fact or otherwise controverted any of Percheron's evidence that the landmen positions were independent contracts, Defendant Percheron Holdingss, LLC is entitled to summary judgment on his ADEA claims.

Finally, with regard to Haskett's remaining claims, because his *respondeat superior* claim against the remaining Defendants ("Unknown Clients of Percheron #1-#9) is a derivative claim which is dependent upon a finding of liability under the ADEA, this claim warrants dismissal. Similarly, because Haskett does not present a plausible claim for relief under the ADEA, the Court lacks jurisdiction to adjudicate Haskett's request for declaratory relief.

## CONCLUSION

Accordingly, for all the foregoing reasons, it is the **ORDER** of the Court that Defendant Percheron Holdingss, LLC's Motion to Strike (Dkt. No. 45) is **DENIED as MOOT**; Defendant Percheron Holdingss, LLC's motions for summary judgment (Dkt. Nos. 6, 7, 19) are **GRANTED**; and that the action filed by Plaintiff Phillip David Haskett is **DISMISSED with prejudice**.

**DONE** at Galveston, Texas, this _____9th_____ day of March, 2016.

JOHN R. FROESCHNER
UNITED STATES MAGISTRATE JUDGE